Eastern District of Kentucky
F I L E D

MAY 19 2020

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:18-CR-81-REW

UNITED STATES OF AMERICA     PLAINTIFF

V.     **PLEA AGREEMENT**

BENIAMIN-FILIP OLOGEANU     DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Superseding Indictment, charging a violation of 18 U.S.C. § 1962(d), Conspiracy to Commit a RICO Offense. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss the remaining counts as against the Defendant.

2. The essential elements of 18 U.S.C. § 1962(d) are:

    (a) That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the affairs of the charged enterprise through a pattern of racketeering activity;

    (b) That the enterprise was established;

    (c) That the enterprise engaged in, or its activities affected, interstate or foreign commerce; and

    (d) That the defendant was employed by, or associated with, the enterprise.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) The Defendant is a Romanian national from Alexandria, Romania. He used the following online monikers: JOHNLA73, JOHNLA23, GWP23, STEWIEGRIFFIN, HELLCAT23, FRANK23, 100EYES, BUTTERS23, JOHNNYBG, PHILIP23, MBR47, MBBR47, MB23, and MM23, among others. He operated or was associated with the following additional usernames: ajaquez203, dineewilliam, kaithybennett, erinbridget456, tedspicer44, and jocelynpierre, among others. He also used the alias, Marian Bradisteanu. The Defendant associated with the Alexandria Online Auction Fraud ("AOAF") Network, an enterprise as defined by 18 U.S.C. § 1961(4).

    (b) On or about December 13, 2014, the Defendant, through online chat, communicated with an individual about converting MoneyPak cards into other forms of payment. Previously, the Defendant and this same individual had been communicating about the conversion of various forms of payment on localbitcoins.com. This individual later became a Confidential Source ("CS") for the United States.

    (c) Working in conjunction with others in the enterprise, the Defendant used the Internet to post advertisements for goods to auction websites, including eBay, and sales websites, including Craigslist. The Defendant and/or his coconspirators often posed as Americans, including American military personnel, to lure victims into believing the authenticity of the advertisement. When the Defendant and/or his coconspirators had convinced victims to purchase the falsely advertised goods, the victims were sent invoices for payment that appeared to be from eBay customer support, with eBay counterfeit trademarks, to make it appear as if eBay was providing customer support.

    (d) Once the Defendant and/or his coconspirators convinced victims to purchase and provide payment for a falsely advertised item, the Defendant reached out to the CS, and others in the United States who provided similar services to the CS, to convert the victim payment into other forms of payment and then transfer part of it to the Defendant in bitcoin. The Defendant also purchased fraud proceeds from other coconspirators, typically in the form of prepaid debit cards, to be similarly processed by the CS and others similarly situated in the United States. The Defendant knew the funds he transferred to the CS constituted the proceeds of unlawful activity.

(e) In accordance with the Defendant's instructions, the CS would exchange the proceeds of fraud into bitcoin. Specifically, the CS, located in the Eastern District of Kentucky in the United States, sent the Defendant, located in Romania, bitcoin (transferred in exchange for fraud proceeds) to bitcoin addresses belonging to the Defendant. The Defendant engaged in this scheme from at least December 13, 2014, until at least approximately September of 2017. This scheme concealed the source, nature, ownership and control of the fraud proceeds. The Defendant knew of the scheme's unlawful purposes and voluntarily joined it.

(f) The Defendant was aware of and/or worked directly with the following co-conspirators: Bogdan-Stefan Popescu, Andrei-Catalin Stoica, Alexandru Ion, and others. He cashed out his fraudulently obtained bitcoin with co-conspirators Vlad-Calin Nistor and Rossen Iossifov.

(g) Prior to becoming a CS, the Defendant and the CS engaged in similar transactions to those described above.

4. The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of $250,000 or twice the gross gain or loss, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. The United States and the Defendant have reached no agreement pertaining to the sentencing guidelines calculations.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant reserves the right to file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

8. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant recognizes that pleading guilty may affect the Defendant's immigration status if the defendant is not a citizen of the United States. The Defendant understands that no one can predict with certainty the effect of the Defendant's convictions on the Defendant's immigration status. The Defendant nevertheless seeks to plead guilty, even if the consequence is the Defendant's automatic removal from the United States.

10. The Defendant agrees to the imposition of a money judgment representing the proceeds obtained by the Defendant as a result of the offense. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense, as set out in the forfeiture allegation of the Superseding Indictment. The Defendant agrees the money judgment is separate from any restitution order entered by the Court. The Defendant waives any and all timing and notice provisions under Rule 32.2.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of executing this agreement, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit

to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the

Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document and the sealed supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky, the Computer Crime and Intellectual Property Section, and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date: 5/19/20   By: _____
Kathryn M. Anderson
Assistant United States Attorney

Date: 5/19/20   By: _____
Timothy C. Flowers
Senior Trial Attorney

6

Date: 5/19/2020

_____
Beniamin-Filip Ologeanu
Defendant

Date: 5/19/2020

_____
David Guarnieri
Attorney for Defendant